JOURNAL ENTRY AND OPINION
Defendant-appellant Mr. Aubrey B. Willacy appeals from a myriad of nine orders entered by the trial court in the prosecution of these parentage proceedings over the years, specifically the orders of: (1) January 29, 1993 [the order subsequent to the jury trial of the defendant in December 1992, in which it was determined that Mr. Willacy was the father and ordered that temporary custody of the child remain with the mother, that the birth certificate of the boy be changed to reflect Mr. Willacy as the father, that Mr. Willacy was to pay all future reasonable medical expenses of the child, that Mr. Willacy was to pay temporary child support of $200 per week plus 2% poundage through CSEA, that Mr. Willacy post a bond in the amount of $3,500 to guarantee the payment of child support and medical expenses, and ordered that all motions to dismiss were denied]; (2) March 11, 1993 [wherein the trial court denied defendant's motion for judgment J.N.O.V. and for new trial, stayed ruling on defendant's motion to compel due to a pending appeal by the defendant from the jury trial judgment, granted defendant's motion for findings of fact and conclusions of law, and granted defendant's motion for a stay of execution of judgment conditioned upon the posting of a supersedeas bond in the amount of $13,000]; (3) June 24, 1994 [the court, applying the bond amount to the financial obligations of the defendant toward the child, disbursed the bond amount of $13,000 to the mother]; (4) August 24, 1994 [the court overruled defendant's motion to modify the order of June 24, 1994/continuation of stay of execution, and stayed ruling on the issues of permanent support and custody, and past care, due to the pendency of defendant's appeal before the Ohio Supreme Court]; (5) May 11, 1995 [in which the trial court stayed ruling on plaintiffs' motion to show cause, and found that the parties had settled their payments regarding prior temporary support and the securing of future payments]; (6) September 15, 1995 [the court ordered that prior custody orders continue, detailed the provision and notices required for future reasonable medical expenses for the child, ordered current and future child support of $10,145.52 per year plus $240 per year for the child's medical insurance premium plus poundage (reflecting a bi-weekly support payment by the defendant of $399.44), overruled all motions concerning permanent custody and visitation as premature, and continued the consideration of past support, plaintiffs' motion to show cause, and plaintiffs' motion to tax costs and fees]; (7) September 22, 1995 [overruled defendant's motion for reconsideration of prior interlocutory determinations ordered September 15, 1995]; (8) October 26, 1995 [the court ordered past care child support for 145 weeks from the birth of the child to the trial in December of 1992 in the amount of $34,003, overruled defendant's oral motion for periodic payments, awarded attorney fees against defendant in the amount of $5,000 to plaintiff's counsel, ordered that the expert witness fee in the amount of $1,842.02 of the DNA expert, Dr. Panke, be shared equally by the parties, assessed costs against the defendant, and overruled any other motions which were still pending before the trial court]; and, (9) February 13, 1998 [overruled the defendant's motion to dismiss the Complaint for lack of subject matter jurisdiction, awarded permanent custody of the child to the plaintiff-mother, ratified the current support order of September 15, 1995, and ordered that the parties follow the standard visitation schedule. For the reasons adduced below, we affirm.
A review of the voluminous record on appeal reflects a contentious history between the parties in determining whether defendant is the natural father of the male child Maxim Chidi Nwabara (d.o.b. February 20, 1990). Rather than restate the basic, lengthy and convoluted underlying facts and procedural history of the case, the reader is directed to their recitation in State exrel. Willacy v. Smith (1997), 78 Ohio St.3d 47, 47-49,676 N.E.2d 109. We will discuss the ten assignments of error, and appellant's gumbo of legal theories, seriatim.
 I THE TRIAL COURT COMMITTED ERROR PREJUDICIAL TO APPELLANT BY OVERRULING APPELLANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION BECAUSE (1) APPELLEES' COMPLAINT FAILED TO ALLEGE THAT "MAX" WAS "BORN OUT OF WEDLOCK," AS R.C. 2151.23 (B) (2) REQUIRES, AND (2) APPELLEES' CIV.R. 36 ADMISSIONS AND DIVORCE DECREE CONCLUSIVELY ESTABLISHED THAT "MAX" WAS NOT "BORN OUT OF WEDLOCK."
Appellant argues that subject matter jurisdiction in the juvenile court for this parentage action is foreclosed by R.C.2151.23 (B) (2), which provides:
 (B) The juvenile court has original jurisdiction under the Revised Code:
* * *
 (2) To determine the paternity of any child alleged to have been born out of wedlock pursuant to sections 3111.01 to 3111.19 of the Revised Code;
Appellant attacks the substance of the allegations in the complaint in that it was never stated specifically that the child was "born out of wedlock."
Appellant's presentation of this same argument was rejected by the Ohio Supreme Court in State ex rel. Willacy v. Smith, supra, at 51-52, when the Court determined that the mother's complaint "sufficiently alleged that Maxim was born out of wedlock by stating that his conception and birth resulted from Nwabara's affair with Willacy." Thus the juvenile court had jurisdiction to hear the matter based on the complaint filed by the mother.
Appellant next argues that the mother's former husband, Mr. Hugley, should have been made a party to the juvenile court action since he was statutorily presumed to have been the father. See R.C. 3111.07 (A). This belief is premised on an application of R.C.3111.03 which provides that where a child is born to a woman within 300 days of the date of the divorce, her husband is presumed to have been the father of that child. The problem with this thesis is that in the 1989 decree of divorce between Ms. Nwabara and Mr. Hugley, the trial court expressly stated by interlineation that "the Plaintiff is pregnant and" Mr. Hugley was "not the father of the unborn" child, i.e., Maxim. See Journal Vol. 1572, page 474. Accordingly, the juvenile court was correct in not joining Mr. Hugley as a party defendant since his status with regard to Maxim had been determined by a court of competent jurisdiction.
Finally appelant, believing there to be concurrent jurisdiction between domestic relations court and juvenile court over the matter, argues that the issue of Maxim's parentage should have been resolved in domestic relations court since it first acquired jurisdiction over the matter. Putting aside the determination of the Supreme Court that the juvenile court properly exercised jurisdiction in the matter, there is no evidence that the domestic relations court divorce action between Ms. Nwabara and Mr. Hugley ever acquired primary jurisdiction over the child's paternity since the unborn Maxim was not a party to that divorce action and the identity of the true father, and resultant support issues with respect to Maxim, were not addressed. All the divorce court decree found was that Mr. Hugley was not the father of Maxim; the court did not take up the separate and distinct issue of who was the natural father and the amount of child support owed, which would be in the nature of a paternity action. Thus, the domestic relations court did not have primary concurrent jurisdiction over the matter of Maxim's paternity action. Instead, primary jurisdiction over the issue of Maxim's paternity was properly exercised in the juvenile court when Maxim, through his mother, exercised his separate right to bring a paternity action against Mr. Willacy. See R.C. 3111.04 and .06; and State ex rel. Willacyv. Smith, supra.
The first assignment of error is overruled.
 II THE TRIAL COURT COMMITTED ERROR PREJUDICIAL TO APPELLANT BY OVERRULING APPELLANT'S MOTIONS: (1) TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION; (2) FOR A DIRECTED VERDICT UPON APPELLEES' OPENING STATEMENT, AT THE CONCLUSION OF APPELLEES' CASE IN CHIEF, AND AT THE CONCLUSION OF ALL THE EVIDENCE; AND (3) FOR JUDGMENT N.O.V., BECAUSE APPELLEES' CAUSES OF ACTION WERE BARRED BY THE DOCTRINES OF `EXHAUSTION,' `LACHES,' AND `RES JUDICATA,' ARISING FROM APPELLEES' PRIOR PROSECUTION TO FINAL JUDGMENT OF A PARENTAGE PROCEEDING REGARDING MAX IN HER 1989 DIVORCE PROCEEDING.
The first argument, concerning subject matter jurisdiction within the juvenile court, is without merit. See the previous assignment of error.
The remaining two arguments both concern the defenses/doctrines of exhaustion, res judicata and laches.
The subargument concerning "exhaustion" is premised on appellant's belief that the domestic relations court had exercised jurisdiction over the paternity of Maxim, therefore the juvenile court could not exercise jurisdiction over the matter. This subargument is without merit. See the previous assignment of error.
The subargument concerning res judicata is premised on appellant's belief, that the divorce action between Ms. Nwabara and Mr. Hugley acts as a bar to the subsequent parentage action in juvenile court. As previously stated, the determination of who, outside Mr. Hugley, was the natural father of Maxim was not decided during the divorce action; the court only found that Mr. Hugley was not the father. Likewise, there is no mutuality of parties between the two actions; the divorce action was missing Mr. Willacy and Maxim, both of whom did not have an opportunity to appear. Thus, the juvenile court action was not barred by application of res judicata.
The subargument concerning laches is premised on appellant's belief that he should have been named a party to the divorce action, the plaintiffs were dilatory in bringing the juvenile court action and that delay materially prejudiced the defendant-appellant. This subargument focuses its energy on the role of the mother only, in not pursuing the paternity of the child during the divorce proceedings and overlooks the separate and distinct statutory right of the child to bring a paternity action in juvenile court, which is what occurred herein through the mother's representation subsequent to her divorce action against Mr. Hugley. Since jurisdiction over the paternity issue of Mr. Willacy was properly exercised in juvenile court, the argument that the mother should have named Mr. Willacy as a party-defendant in the divorce action is prattle. Likewise, any alleged prejudice (i.e., he allegedly lost his right to a jury trial on the paternity issue) in not naming Mr. Willacy as a party-defendant in the divorce action is muted by the fact that jurisdiction was properly in juvenile court by virtue of the child's right to pursue the paternity action in that forum and that Mr. Willacy's right to confront the evidence and be heard was preserved.
The second assignment of error is overruled.
 III THE TRIAL COURT COMMITTED ERROR PREJUDICIAL TO APPELLANT IN OVERRULING APPELLANT'S MOTIONS: (1) FOR A DIRECTED VERDICT UPON APPELLEES' OPENING STATEMENT, AT THE CONCLUSION OF APPELLEES' CASE IN CHIEF, AND AT THE CLOSE OF ALL THE EVIDENCE[;] AND (2) FOR JUDGMENT N.O.V. BECAUSE APPELLEES NEITHER HAD, PROFFERED, NOR ADDUCED ANY EVIDENCE SUFFICIENT TO REBUT THE R.C. 3111.03 (A) PRESUMPTION THAT APPELLEE'S FORMER HUSBAND WAS MAX'S FATHER.
The following was recently stated by this court:
 The standard for granting a motion for judgment notwithstanding the verdict or in the alternative for a new trial pursuant to Civ.R. 50 (B) is the same as that for granting a motion for directed verdict pursuant to Civ.R. 50 (A). Wagner v. Roche Laboratories
(1996), 77 Ohio St.3d 116, 121, 671 N.E.2d 252, 256, citing Gladen v. Greater Cleveland Regional Transit Auth. (1996), 75 Ohio St.3d 312, 318-319, 662 N.E.2d 287, 294 and Posin v. A.B.C. Motor Court Hotel, Inc. (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427, 430, 344 N.E.2d 334, 338.
Civ.R. 50 (A) (4) states:
 When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
 Recently, in Texler v. D.O. Summers Cleaners Shirt Laundry Co. (1998), 81 Ohio St.3d 677, 693 N.E.2d 271, the Ohio Supreme Court reexamined the standard for deciding a motion for judgment notwithstanding the verdict and/or new trial. The court stated:
 In Wagner, we quoted Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 284-285, 21 O.O.3d 177, 178-179, 423 N.E.2d 467, 469, in setting forth the standard for deciding a motion for a directed verdict or for a judgment notwithstanding the verdict:
 The law in Ohio regarding directed verdicts is well formulated. In addition to Civ.R. 50 (A), it is well established that the court must neither consider the weight of the evidence nor the credibility of the witnesses in disposing of a directed verdict motion. * * * Thus, "if there is substantial competent evidence to support the party against whom the motion is made, upon which reasonable minds might reach different conclusions, the motion must be denied. Kellerman v. J.S. Dung Co. (1964), 176 Ohio St. 320
[27 O.O.2d 241, 199 N.E.2d 562] * * *.' Hawkins v. Ivy (1977), 50 Ohio St.2d 114, 115 [4 O.O.3d 243, 244, 363 N.E.2d 367, 368]
 In Wagner, we stated that "`[t]he "reasonable minds" test of Civ.R. 50 (A) (4) calls upon the court only to determine whether there exists any evidence of substantial probative value in support of [the claims of the party against whom the motion is directed] * * * A motion for a directed verdict raises a question of law because it examines the materiality of the evidence, as opposed to the conclusions to be drawn from the evidence.' Ruta v. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, 68-69, 23 O.O.3d 115, 116-117, 430 N.E.2d 935, 938." Wagner, 77 Ohio St.3d at 119-120, 671 N.E.2d at 255-256.
 The granting or denial of a motion for judgment notwithstanding the verdict or in the alternative new trial is committed to the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. Rohde v. Farmer (1970), 23 Ohio St.2d 82, 87, 52 O.O.2d 376, 378-379, 262 N.E.2d 685, 689. The term abuse of discretion connotes more than an error in law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary or unconscionable. Atkinson v. International Technegroup, Inc. (1995), 106 Ohio App.3d 349, 358, 666 N.E.2d 257, 266.
 It is well established that where an appellant challenges a trial court's judgment in a civil action as being against the manifest weight of the evidence, the function of the appellate court is limited to an examination of the record to determine if there is any competent, credible evidence to support the underlying judgment. C.E. Morris Co. V. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 280, 376 N.E.2d 578; Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 461 N.E.2d 1273; Chandler and Assoc., Inc. v. America's Healtheare Alliance, Inc. (Oct. 30, 1997), Cuyahoga App. Nos. 71325, 71832, unreported. If competent, credible evidence is present, a reviewing court will not reverse the trial court's judgment. Fijalkovich v. W. Bishop Co., Inc. (Sept 18, 1997), Cuyahoga App. No. 71725, unreported.
Baughman v. Kregs (December 10, 1998), Cuyahoga App. No. 73832, unreported, 1998 WL 855610, at 2-3.
Viewing the record before us, there is ample evidence upon which to support the reasonable belief that Mr. Willacy is the natural father of Maxim and therefore defeat the subject motions at issue. Apart from the testimony of the child's mother, Ms. Nwabara, that Mr. Willacy is the natural father of the child, the record contains the results of a DNA test[1], testified to by expert witness Dr. Panke, which indicates with a probability of 99.95% that Mr. Willacy is the father of Maxim. By reverse implication, the scientific test result of Mr. Willacy's DNA excludes all other men by a probability of .05%, more than enough to rebut the statutory presumption under R.C. 3111.03 (A) (1) that, the child having been born within 300 days of the divorce decree, Mr. Hugley was the father of Maxim.
The third assignment of error is overruled.
 IV THE TRIAL COURT PREJUDICIALLY VIOLATED APPELLANT'S RIGHTS TO DUE PROCESS OF LAW, EQUAL PROTECTION OF THE LAW SET FORTH IN R.C. 3111.07 (A), AND TO TRIAL BY JURY, IN OVERRULING HIS MOTIONS FOR A DIRECTED VERDICT AND FOR JUDGMENT N.O.V., BY UTILIZING THE DOCTRINE OF RES JUDICATA — PREMISED UPON APPELLEES' PRIOR PARENTAGE DETERMINATION REGARDING MAX — AS A SWORD AGAINST APPELLANT BECAUSE: (1) APPELLANT WAS NEITHER A PARTY TO, THE PRIVY OF ANY PARTY TO, NOR GIVEN NOTICE OF SUCH PRIOR PROCEEDING; (2) WAS PREJUDICED BY THE SHIFTING OF APPELLEES' BURDEN OF PROOF UPON SUCH ISSUE TO HIM; AND, (3) WAS THEREBY FORECLOSED, THROUGH AN ERRONEOUS JURY INSTRUCTION, FROM HAVING THE JURY CONSIDER THE DEFENSE AFFORDED TO HIM BY R.C. 3111.03 (A) (1).
In the addled argument supporting this assignment, appellant appears to take issue with his inability to convince the trial court to place before the jury Mr. Willacy's assertion that Mr. Hugley was presumed to be the father of Maxim since the child was born within 300 days of the divorce decree, see R.C. 3111.03 (A) (1), that Mr. Hugley was allegedly required to be joined as a party in the juvenile court action pursuant to R.C. 3111.07 (A), and that the court's ruling erroneously kept these issues from the jury to Mr. Willacy's detriment. The record clearly discloses that the trial court, when speaking to counsel before the start of the trial, addressed the relevancy of Mr. Hugley and his statutory presumption of paternity:
 THE COURT: My ruling is that this Court had jurisdiction to hear it [the paternity of the child], that Mr. Hughley [sic] was found not to be the father of the unborn child, so therefore, any presumption that he is to be made a party in this case is removed and that is not going to he [sic] given to the Jury in any mood or in any form, Mr. Hughley's [sic] name will not be mentioned to the Jury just so you will understand . . . and I will instruct . . . I am instructing you now not to bring up Mr. Hughley's [sic] name at all during this trial, he's not a party to this case. Okay? . . . so I'm instructing you he is found not to be the father, that's Res judicata as to Mr. Hughley [sic] . . . so it's no sense in bringing it up . . . just so we understand the ruling now . . . because I don't want the Jury to hear that . . . now . . . uh I'll listen to any other Motions. (R. 11-12.) [Explanation added.]
R.C. 3111.07 (A) provides that the proper parties to an action to determine paternity include, in pertinent part, "each man presumed to be the father under section 3111.03 of the Revised Code . . ." While Mr. Hugley initially was subject to that presumption during the divorce case involving Ms. Nwabara, the domestic relations court found that he was not the father of Maxim. Although not stated or detailed by the court in its findings, this presumption of paternity was necessarily rebutted by clear and convincing evidence. Hulett v. Hulett (1989), 45 Ohio St.3d 288. Therefore, Mr. Hugley's presumption was rebutted in the divorce action and, as to him, the issue of his presumed paternity of Maxim was res judicata in subsequent actions involving the issue of the child's paternity. Accordingly, Mr. Hugley was not a proper party in the juvenile court action because he was no longer presumed to be the father under R.C. 3111.03 (A). We find no error in the court's refusal to instruct the jury regarding Mr. Hugley's presumption of paternity in the divorce action or to join Mr. Hugley as a party.
The, fourth assignment of error is overruled.
 V THE TRIAL COURT COMMITTED ERROR PREJUDICIAL TO APPELLANT IN PERMITTING DR. PANKE TO TESTIFY AT ALL AND, THEREAFTER, IN OVERRULING APPELLANT'S MOTIONS FOR A DIRECTED VERDICT BASED UPON HER OPINION TESTIMONY BECAUSE: (1) APPELLEES REFUSED TO DISCLOSE HER IDENTITY AS A WITNESS BEFORE TRIAL COMMENCED; (2) APPELLEES FAILED TO PROVIDE APPELLANT WITH A NARRATIVE REPORT FROM SUCH WITNESS AS REQUIRED BY LOC.R. 21.1; AND, (3) APPELLEES FAILED TO ADDUCE ANY COMPETENT "CHAIN OF CUSTODY" EVIDENCE ESTABLISHING THE AUTHENTICITY OF THE BLOOD SAMPLES WHICH DR. PANKE TESTED AND UPON WHICH SHE BASED HER OPINION.
The record reflects that Dr. Panke was chosen by the parties to conduct the DNA testing prior to the Plaintiffs' Complaint being filed. The court had no involvement in the choosing of the medical expert or the testing of the parties' blood samples. Mr. Willacy paid for the testing and arranged for Dr. Panke to conduct the testing. Ms. Nwabara arranged with Dr. Panke to have her blood sample, and the blood sample of Maxim, drawn on December 10, 1991, at a medical laboratory in Euclid, Ohio, which lab was under the direction of Dr. Panke with regard to the collection of samples for DNA testing and shipment of same to her in Cincinnati, Ohio. Mr. Willacy arranged with Dr. Panke to have his blood sample drawn on December 10, 1991, at a medical laboratory in Brunswick, Ohio, which lab was also under the direction of Dr. Panke with regard to the collection of samples for DNA testing and shipment of same to her. Pursuant to the directions of Dr. Panke, the blood samples were collected at the two laboratories and then shipped to Dr. Panke at her laboratory in Cincinnati, who then tested those samples. Dr. Panke's one-page report, dated December 20, 1991, contained the test results and an interpretation of those results. Dr. Panke testified that nothing in the packaging, shipping or labeling of the blood samples gave any indication of tampering or mishandling.
The record further indicates that Mr. Willacy admitted in his Answer filed on April 23, 1992, that he had agreed to take the DNA test and that he had seen the results of that testing which indicated that he was the likely father of the child. See Answer at paragraphs 5 and 6. It is therefore beyond doubt that Dr. Panke's report, though brief, was provided to Mr. Willacy.
Loc.R. 21.1 (B), states in pertinent part, "* * * An expert will not be permitted to testify or provide opinions on issues not raised in his report." The purpose of the rule is to eliminate surprise, with the existence and effect of prejudice resulting from noncompliance being the primary concern. See David v. Schwarzwald, Robiner, Wolf Rock, Co., L.P.A. (1992), 79 Ohio App.3d 786, 795. The court has broad discretion to determine whether parties are in compliance with Loc.R. 21.1 on discovery regarding expert witnesses, and its rulings will not be reversed absent affirmative showing of an abuse of discretion. Nakoff v. Fairview Gen. Hosp.
(1996), 75 Ohio St.3d 254, syllabus.
In the case before us, Mr. Willacy, given his knowledge of Dr. Panke and her DNA report, cannot seriously argue that he was surprised by the substance of the DNA report of Dr. Panke or that Dr. Panke, despite not being formally identified by plaintiffs prior to trial as a potential witness, was actually presented at trial as a witness for the child and mother. Having taken no steps to seek supplementation of Dr. Panke's report prior to trial, and not having secured, an alternative DNA expert report for his own use during trial, Mr. Willacy has not demonstrated that his ability to cross-examine Dr. Panke was substantially harmed or that his defense was otherwise prejudiced in a trial by ambush.
With regard to the chain of custody subargument, it is noted that the defense cross-examined Dr. Panke concerning the fact that she did not personally process the drawing of the blood samples or prepare those samples for shipment to Cincinnati. Appellant argues that this break in the chain of custody renders the blood evidence and the DNA results to be inadmissible. This belief is misplaced. Any breaks in the chain of custody go to the weight afforded to the evidence, not to its admissibility. Columbus v. Marks (1963),118 Ohio App. 359, Thus, the trial court did not err in admitting the contested scientific evidence for the jury's determination.
The fifth assignment of error is overruled.
 VI THE TRIAL COURT COMMITTED ERROR PREJUDICIAL TO APPELLANT BY OVERRULING HIS MOTION FOR A DIRECTED VERDICT AT THE CONCLUSION OF APPELLEES' CASE IN CHIEF BECAUSE DR. PANKE'S MEDICAL OPINION TESTIMONY HAD NOT BEEN DETERMINED TO BE ADMISSIBLE IN EVIDENCE AT THE TIME APPELLEES RESTED; SUCH OVERRULING OF SAID MOTION IMPROPERLY REQUIRING APPELLANT TO PROCEED WITH HIS DEFENSE OUT OF ORDER.
In this assignment, appellant argues that the court was obligated to conclusively rule on the admissibility of the DNA evidence prior to denying the defense motion for a directed verdict made at the close of plaintiffs' case, and that by virtue of not so conclusively ruling, there was no DNA evidence or expert testimony admitted upon which to deny the subject motion. Appellant admits that when the expert testimony and DNA evidence was presented, which drew the defense objection thereto, the trial court made a conditional ruling to admit the scientific testimony and evidence and reserved final ruling on the admissibility of that evidence until such time as the jury was about to be charged and before final arguments of counsel. (R. 222-223.) Except for renewing the motion for a directed verdict based on the subject matter jurisdiction of the trial court (R. 284), the defense did not renew its previously raised motion for directed verdict based on the evidence, See R. 283-285.
Having failed to renew at the close of all the evidence its previously raised motion for directed verdict on the evidence, the defense waived any error in the earlier denial of that dispositive motion. Helmick v. Republic-Franklin Ins. Co. (1988), 39 Ohio St.3d 71.
Had there been no waiver of the claimed error, we would still conclude that the denial of the motion for a directed verdict made at the close of plaintiffs' case in chief was proper. Plaintiff-mother testified during the plaintiffs' case that she had sexual intercourse with Mr. Willacy a number of times during that period of time when the child could have been conceived and that during that critical period she had sexual relations only with Mr. Willacy. Also, the court conditionally admitted the expert testimony and the DNA evidence. The testimony of either of these witnesses was enough for reasonable people to have concluded that Mr. Willacy, contrary to his asseverations, was the father of the child. Civ.R. 50 (A) (4). Accordingly, the trial court did not err in denying Mr. Willacy's motion for a directed verdict on the evidence presented.
The sixth assignment of error is overruled.
 VII THE TRIAL COURT COMMITTED ERROR PREJUDICIAL TO APPELLANT IN ADMITTING DR. PANKE'S OPINION TESTIMONY, BECAUSE SAME WAS PREDICATED UPON A METHOD OF GENETIC TESTING WHICH WAS NEITHER AUTHORIZED BY R.C. 3111.09 (E), NOR STIPULATED BY THE PARTIES AS BEING ADMISSIBLE, NOR ESTABLISHED BY THE EVIDENCE AS BEING SCIENTIFICALLY AND STATISTICALLY VALID.
R.C. 3111.09 (E), effective April 11, 1990, and at the time of the filing of the Complaint herein, provides:
 (E) As used in sections 3111.01 to 3111.19 of the Revised Code, "genetic tests" means a series of serological tests, that are either immunological or biochemical or both immunological and biochemical in nature, and that are specifically selected because of their known genetic transmittance. "Genetic tests" include, but are not limited to, tests for the presence or absence of the common blood group antigens, the red blood cell antigens, human lymphocyte antigens, serum enzymes, and serum proteins. (Italicization added.)
Appellant argues that the statute does not authorize the use of DNA testing. The language employed by the statute in itemizing the types of tests which would satisfy the definition of a "genetic test" was expressly made to be non-exhaustive. Note the statutory phrase "`Genetic tests' include, but are not limited to, * * *." Dr. Panke testified that the DNA testing employed by her laboratory was testing on blood samples, i.e., serological in nature for practical purposes. Dr. Panke also explained that the testing involved the transmittance of genetic material between the individuals sampled. Also, the testing of the DNA, which is a chemical compound in and of itself within an organism, is in the nature of a biochemical test. We conclude that the statute relied upon above could, without having specifically stated as such, authorize the testing and comparison of DNA as a "genetic test."
Even if the statute relied upon by appellant did not authorize the DNA test utilized by the parties herein, the test results at issue would still be admissible. The statute relied upon by appellant applies to genetic tests ordered by the court on its own motion or upon the motion of any party to the action. See R.C.3111.09 (A). The genetic testing of the parties sub judice was not done by order of court or upon the motion of any party, hence reliance upon R.C. 3111.09 (E) is misplaced when determining admissibility of the DNA evidence under these particular facts. Instead, the admissibility of the genetic test on the parties is governed by the relevancy standard for scientific evidence. Statev. Pierce (1992), 64 Ohio St.3d 490. The trial court properly admitted the DNA evidence and testimony because it was relevant and aided the trier of fact in determining the paternity of the child.
Appellant next argues that because the genetic testing was not done under the court's supervision or control, that the parties had to mutually agree to the accuracy of the test results or Dr. Panke had to indicate the standard operating procedures used in the DNA testing. For this proposition appellant cites to Hulett v. Hulett
(1989), 45 Ohio St.3d 288, 289. The only significance of Hulett, at 289 (a recitation of the facts of that case), that this writer can divine is that the Supreme Court mentioned during the summary of the procedural history of the parties that the parties in Hulett did "not dispute the accuracy" of the DNA test results. Otherwise, there is no proposition of law contained in Hulett which even hints at a mandate that the parties to a paternity action must agree to the accuracy of the DNA test results in order for those results to be admissible. As previously provided, the admissibility of the DNA evidence in this case is based on the relevancy standard.State v. Pierce, supra.
Finally, appellant maintains that admissibility of the DNA evidence was subject to a demonstration that "evidence describing "the standard operating procedures used in the DNA testing' done by Dr. Panke was adduced." Appellant's brief at 38. For this alleged proposition of law appellant cites to State v. Pierce, supra, at 498. In reviewing that specific citation, the Supreme Court made mention in its recitation of the evidence that the DNA expert testified to the fact that he had reviewed the operating procedures used at the DNA laboratory and that the standards for testing at that laboratory were followed in analyzing the blood samples. This writer can find no such proposition of law contained therein as asserted by appellant. Appellant's reliance on Pierce is misplaced.
The seventh assignment of error is overruled.
 VIII THE TRIAL COURT COMMITTED ERROR PREJUDICIAL TO APPELLANT IN INSTRUCTING THE JURY BY AFFORDING APPELLEES THE BENEFIT OF A STATUTORILY NONEXISTENT PRESUMPTION; MISCASTING THE BURDEN AND DEGREE OF PROOF; DENYING APPELLANT THE BENEFIT OF THE R.C. 3111.03 (A) (1) PRESUMPTION; AND BY GIVING AN INSTRUCTION WHICH DID NOT CONFORM TO THE UNDISPUTED FACTS IN THE CASE.
In this assignment appellant, in significant part, argues that the court erred in instructing the jury that: (1) a presumption of paternity arose against Mr. Willacy by virtue of the DNA test result showing a likelihood greater than 95% that he was the father; (2) the burden to rebut the presumption of paternity raised by the DNA test result rested with Mr. Willacy, and that degree of proof required to rebut the presumption was by clear and convincing evidence. (See R. 299-300 for the jury charge at issue.) A review of the record surrounding these two particular subarguments reflects that defense counsel, when given the opportunity to correct or add to the jury instructions, took no steps to do so in the manner of an objection. Accordingly, these two issues are waived for appellate purposes. State v. Long (1978), 53 Ohio St.2d 91.
Appellant next complains that the court erred in its jury instructions by not instructing that there was a presumption of paternity as to Mr. Hugley by virtue of R.C. 3111.03 (A) (1). As detailed earlier in this opinion, there was no extant presumption of paternity with regard to Mr. Hugley in this paternity action. Thus, the court did not commit error in failing to give the requested jury instruction concerning Mr. Hugley.
The eighth assignment of error is overruled.
 IX THE TRIAL COURT COMMITTED ERROR PREJUDICIAL TO APPELLANT AND GROSSLY ABUSED ITS DISCRETION IN MAKING AN AWARD OF CHILD SUPPORT WHICH (1) OBLIGED APPELLANT TO PAY SAME FOR A PERIOD PRIOR TO THE DATE ON WHICH JUDGMENT WAS ENTERED AND (2) WAS NOT MADE IN ACCORDANCE WITH R.C. 3113.215.
Appellant first argues that the trial court erred in ordering that child support payments commence as of December 2, 1992 (the date the jury trial commenced and ended with a verdict in favor of plaintiffs-appellees) rather than January 29, 1993 (the date the court journalized the trial verdict in which it was determined that Mr. Willacy was the father of the child, and the court ordered future child support commencing from December 4, 1992)
A trial court has considerable discretion in matters of calculating child support awards; absent an abuse of discretion, therefore, a child support award will not be disturbed on appeal.Dunbar v. Dunbar (1994), 68 Ohio St.3d 369, 371; see, also, Payne v. Cartee (1996), 111 Ohio App.3d 580, 585. Abuse of discretion means that the trial court's attitude was arbitrary, unreasonable, or unconscionable. Payne v. Cartee, supra.
It has been held that the adjudicated natural parent has a duty to support a child from birth. In re Adoption of Taylor
(1989), 61 Ohio App.3d 500, 503. R.C. 3111.13 provides what may be included in a judgment in an action brought for the purpose of determining the existence or nonexistence of a parent child relationship. Pursuant to Section 3111.13 (C), a judgment may include "any other provision directed against the appropriate party to the proceeding, concerning the duty of support * * h." It has been concluded that Section 3111.13 (C) is broad enough to allow a child support award to be made retroactive to the date of birth of the child. In re Adoption of Sherry (1995), 107 Ohio App.3d 830,834, fn. 2. Based on the above authority we cannot conclude that the trial court, which had the authority to order child support from the 1990 birth of the child forward, abused its discretion in ordering future child support commencing two days after the jury trial.
Appellant next argues that the temporary award of $200 per week in child support within the January 29, 1993 order was an abuse of discretion because the trial court did not have before it any financial information from the parties as required by R.C. 3113.215.
The trial court ascertained from Mr. Willacy after the verdict that he grossed approximately $105,000 in 1991 while the mother grossed approximately $35,000 that year. The mother also testified that in-home day care for the child, which was needed because she was a single mother who worked during the day at a full-time job, was approximately $600 per month. The court ordered the parties to submit additional financial information within thirty days of the jury verdict so that the court could compute past care and make any adjustments necessary to the future support award based on the information submitted. Given the disparity of incomes between the father and the single mother and the undoubted needs of a young child (food, shelter, medical, etc.), it is not inconceivable or outrageous that the trial court provided some small measure of relief to the mother in the form of temporary support at the rate of $200 per week, which amount would be reviewed in greater detail once the parties had submitted complete financial information. This ability of the court to order temporary support is authorized by R.C. 3111.13 (C) under broad powers therein to include in the judgment "any other matter in the best interest of the child." In fact, but not at issue herein, effective January 1, 1998, the court in parentage actions is required to issue temporary child support orders requiring the alleged father to pay same during the pendency of the action. R.C. 3111.111. We find no error in the court making an award of temporary child support.
The ninth assignment of error is overruled.
 X THE TRIAL COURT COMMITTED ERROR PREJUDICIAL TO APPELLANT BY REFUSING TO GRANT APPELLANT' S REQUEST FOR REIMBURSEMENT OF ALL SUMS HE HAD BEEN REQUIRED TO PAY PURSUANT TO THAT COURT'S PRIOR, INTERLOCUTORY ORDERS WHICH WERE NOT RATIFIED OR ADOPTED IN THE FEBRUARY 13, 1998 JUDGMENT.
While the language used in this assignment of error is succinctly stated the appellant's accompanying argument is extremely confusing and disjointed. Likewise, appellees' response to this assignment is equally of little value. Using the appellant's argument as a rough guide, it appears that appellant is principally arguing that the trial court: (1) could not award any amount to plaintiffs as "past care"; (2) erred in awarding attorney fees in any amount to plaintiffs; and, (3) erred in awarding any amount of Dr. Panke's expert witness fee as costs against Mr. Willacy.
As to the "past care" subargument, appellant is mistaken in his belief that child support may only be applied to periods after the determination of paternity, in other words, prospectively. This court has determined that once parentage is determined the trial court may award past care dating back to the birth of the child pursuant to statutory authority. Seegart v. Zietlow (Cuyahoga, 1994), 95 Ohio App.3d 451; Beach v. Poole (Muskingum, 1996),111 Ohio App.3d 710, discretionary appeal disallowed in (1996),77 Ohio St.3d 1482; R.C. 3111.13.
As to the award of attorney fees it is reiterated that this award was made by the court's order of October 26, 1995. That order reflects, in part, that the court overruled the pending motion to show cause (filed July 22, 1994, by plaintiffs because defendant had not yet paid his child support obligation, had taken a number of procedural steps to make multiple interlocutory appeals which were ultimately dismissed, took steps seeking to stay enforcement of any monetary award, failed to provide complete financial information to the court on a timely basis, the small mountain of briefing necessitated as a result of these tactics, and the court time required by these procedures) as moot. Despite the mootness ruling, the trial court granted attorney fees,
 ". . . under the statutes of the Ohio Revised Code for issues of support which the Court took into consideration over and above the issue of the adjudication of parentage, including but not limited to the period of time allowed for calculations and hearings on past care, current support, actual Court hearings, briefs and evidence concerning support."
Court Order of October 26, 1995, at 2.
Quite clearly, the dilatory maneuvers employed by Mr. Willacy to evade his legal responsibilities toward his offspring, while pirouetting about the legal landscape running up the legal costs of plaintiffs, set the stage for the trial court in awarding attorney fees to plaintiffs in the amount of $5,000 as support. This support, albeit in the form of compensation for incurred attorney fees as support and not as a punitive measure for frivolous conduct pursuant to R.C. 2323.51, is authorized pursuant to the liberal policies governing the award and terms of child support pursuant to R.C. 3111.13.
As to the expert witness fee, the record reflects that in its order of October 26, 1995, the court equally divided Dr. Panke's witness fee of $1,842.02 between the two parties as costs. The award of such witness fees as costs is authorized pursuant to R.C.3111.14. The trial court took into account that the expert witness was procured jointly by the parties prior to the action and that the witness testified at the trial. We find no abuse of discretion in Mr. Willacy being required to pay for one-half of Dr. Panke's fee as costs.
Finally, with a passing remark in his brief at 41-42, appellant argues that the court, if it could consider past care, erred by (1) giving the plaintiffs a windfall amount and (2) not requiring documentation of the specific amounts actually expended for past care in making its computations. Appellant, apart from uttering the phrase "windfall amount," makes no citation to the record as to what specific items of past care he considers to be included within that term, or what part of the support calculation he considers to be objectionable as a windfall. In making its award of child support under R.C. 3111.13 (E), the court was required to comply with R.C.3113.215 (B) (1), which itself requires that the court calculate the amount of child support in accordance with basic child support schedules and worksheets as contained in divisions (D), (E) and (F) of that section. In calculating the child support award, the court had at its disposal the federal tax returns of the parties for the relevant years in question for past support (1990, 1991 and 1992) and the basic child support schedules and worksheets called for in R.C. 3113.215 (D)-(F) for those years. See Journal Items 139, 142, 149. Given the information contained therein, we find no abuse of discretion in the court's award of past care child support.
The tenth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
JAMES M. PORTER, A.J., and MICHAEL J. CORRIGAN, J., CONCUR.
 __________________________________ JAMES D. SWEENEY JUDGE
[1] "The acronym DNA refers to deoxyribonucleic acid, the building blocks of human life which are contained in every cell in the body.