CITY OF COLUMBUS, APPELLEE, *v.* MARKS, APPELLANT.

(No. 7010—Decided February 19, 1963.)

*Mr. Russell Leach,* city attorney, *Mr. Bernard T. Chupka, Mr. Gordon L. Sroufe* and *Mr. William B. Shimp,* for appellee. *Messrs. Wonnell & Zingarelli,* for appellant.

DUFFEY, J. This is an appeal from a conviction in the Municipal Court of Columbus, on the charge of operating a vehicle while under the influence of alcohol. The single assignment of error is the admission of expert testimony based on a blood test of the defendant, appellant herein.

After his arrest the defendant was taken to the police station. With his consent, and at his request, he was given a blood test. This was taken in a small room used for this purpose at police headquarters. The arresting officer testified that he observed the specimen being taken. He did not recall the name of the person taking it but referred to him as an "intern." The specimen was placed in a glass vial which was empty at the time. He did not recall where the vial had been kept. He stated that before inserting the needle the person taking the specimen cleansed the defendant's arm "with alcohol or iodine or whatever disinfectant they use." After the taking of the specimen, he sealed and labeled it, took it to the laboratory and placed it in the refrigerator. He did not recall where the defendant was at the time the vial was sealed and labeled.

The police chemist testified that the person on duty at that time, and whose name appeared on the specimen vial, was an "extern" by the name of Michael. He stated that as part of

his duties, he, the chemist, cleansed and sterilized the vials, that he took these to the room in a sealed bag, that he did not deliver them to any particular person, and that he did not know who had charge of the room. He had no knowledge with respect to the particular vial used for the defendant's specimen prior to receiving it for testing.

The defendant objected to the admission of the expert testimony of the chemist with respect to the testing of the blood specimen and the test results. The grounds were (1) the specimen vial was not sealed in the presence of the defendant and (2) the identity of the person who took the specimen was not known.

Whether the defendant was present at the time of the sealing and labeling goes to the weight of the evidence. It is not part of the foundation for its admission.

The defendant relies primarily on the second ground of the objection. The person who took the specimen was never called as a witness by the prosecution. The defendant argues that he was denied the right to cross-examine that person as to the manner of taking the specimen, the condition of the equipment, his competency, etc. Counsel contend that this was a substitution of the officer's testimony for that of an "essential" witness and, therefore, a break in the "chain of evidence."

Defendant was not denied the right to cross-examine any witness presented. The witness here was never called, nor is there any break in the chain of evidence establishing the *identification* of the specimen tested. The basis of defendant's contention is a proposition that the person taking the specimen was essential to the admission of the expert testimony, and that we should hold him to be essential because to do otherwise is to deny the defendant an opportunity to cross-examine. As we understand it, the defendant is not arguing that this witness was essential in any sense of the proof of facts under evidence law, but that we should so hold as a matter of constitutional right in order to afford the defendant a fair means of meeting this scientific evidence. In this respect the argument is somewhat analogous to the "exclusionary" rule under which admissibility is denied to competent, relevant evidence which was illegally obtained. See *Mapp* v. *Ohio* (1961), 367 U. S., 643, 6 L. Ed. (2d), 1081, 81 S. Ct., 1684.

In our opinion the requirement that the prosecution lay a proper foundation for the admission of expert testimony on blood tests affords an adequate protection for the defendant's interest. There must, of course, be a foundation showing a complete chain of evidence establishing the identification of the specimen. However, the admissibility of data from scientific tests *also* requires reasonable proof of three other recognized aspects of foundation:

(1) The test used must be legally acceptable.

(2) The particular apparatus used must be reliable.

(3) The test must have been conducted and the apparatus used in a competent manner by a qualified person.

An extensive review of cases with respect to blood tests shows that most litigation concerns the identification of the specimen. The next most substantial group of authorities has dealt with the reliability of the test used. Considerably fewer cases deal with the apparatus used in testing or with the competency of the person making the test. There has been very little litigation with respect to the apparatus used, or the competency of the person, in the taking of the blood specimen itself.

In most instances of the use of scientific data the sufficiency of the specimen as a specimen is obvious and not contested. However, the apparatus used to obtain a specimen and the manner of its use can be an integral part of the process. In such cases reasonable proof of the reliability of the specimen is just as essential to the foundation as is the reliability of the test itself or the testing process.

In blood tests the specimen can be unreliable. Factors in the obtaining of a specimen which can affect it include the sterilization of the sampling apparatus in alcohol, the use of an alcohol swab on the arm, the failure to obtain whole blood, etc. These factors may contaminate or otherwise make the specimen itself an unreliable basis for testing. See 39 Jour. Crim. L. & Criminology (1948-49), 225, 402, 411. See, also, *Murphy, Admx.,* v. *New York State Thruway Authority* (1960), 23 Misc. (2d), 1078, 204 N. Y. Supp. (2d), 953, where the court dealt with the competency and qualifications under New York law of the person taking the specimen. On the effect of an alcohol arm swab, see *People* v. *Ward* (1958), 14 Misc. (2d), 518, 178 N. Y. Supp. (2d), 708; *People* v. *Maxwell* (1959), 188 N. Y. Supp. (2d), 692;

*People* v. *Douglas* (1959), 16 Misc. (2d), 181, 183 N. Y. Supp. (2d), 945; *People* v. *Modell* (1956), 143 Cal. App. (2d), 724, 300 P. (2d), 204. Even though reliable when taken, a specimen can also become unreliable because not properly preserved or cared for. See 21 A. L. R. (2d), 1216, 1229. That is not involved in this case.

In the present case there is a virtual absence of evidence as to the reliability of the particular apparatus used to obtain the specimen, and of evidence on the competency of the person who took it. However, the objection in the trial court was specific, and neither there nor in this court has defendant attacked the admission of the evidence in that regard. We, therefore, express no opinion on the evidentiary sufficiency of the foundation. In our opinion the right to require a proper foundation for the admission of the scientific data, if insisted upon, together with the right to attack it by presenting contra evidence, provides the opposing party with adequate opportunity to protect his interest.

It may be that in order to lay a sufficient foundation, an attorney would as a practical matter find it convenient or even necessary to present the person who actually took the blood specimen. However, it is not necessary to call such a witness as a matter of law regardless of the sufficiency of the evidentiary foundation.

The judgment of the Municipal Court will be, and hereby is, affirmed.

*Judgment affirmed.*

DUFFY, P. J., and BRYANT, J., concur.