OPINION
Defendant-appellant, Keith Blumensaadt ("appellant"), appeals from his conviction in the Lake County Court of Common Pleas for one count of abduction in violation of R.C. 2905.02.
On January 15, 1999, the grand jury indicted appellant on one count of kidnapping and one count of abduction. Appellant had been arrested in the case on November 12, 1998, and entered a plea of not guilty the next day. The case proceeded to trial on May 2, 1999.
Stacey Belcher testified that she and Mercy Shipman went to the Avenue Bar and Grille in Mentor on November 12, 1998. The establishment was crowded and the women had difficulty finding a place to sit. Finally, Belcher and Shipman noticed a man sitting alone at a booth. The man, who introduced himself as Steve, agreed to let them sit there and bought them both drinks. Fifteen to twenty minutes later, appellant came to the table and the group casually conversed with each other.
Stacey Belcher decided to go up to the bar. Appellant accompanied her. Stacey Belcher told appellant she wished to go home and wanted to phone someone to pick her up. Her friend, Mercy Shipman, was enjoying herself and Stacey Belcher did not want to ask Shipman to drive her home. Appellant offered to let Stacey Belcher use his cell phone. The phone was located in Steve's car. Appellant and Stacey Belcher went to the car. Stacey Belcher tried calling her father but there was no answer. She then dialed a wrong number before calling her cousin. The cousin could not come for Stacey Belcher but did give Stacey Belcher the phone number of her father, Stacey's uncle. Stacey called her uncle, Terry Belcher, who agreed to pick up his niece.
Stacey Belcher returned the phone to appellant and began to exit the car. She averred appellant grabbed her hair braid and pulled her toward him. Appellant stated she was not going anywhere. Appellant tried to kiss Stacey Belcher and touch her body. Appellant pulled Stacey Belcher almost onto his lap. Appellant said she did not know who he was and that he could kill her in the parking lot. Stacey Belcher began crying and asked appellant to let her go.
Appellant banged Stacey Belcher's head against the steering wheel, asking her who did she think she was. Stacey Belcher saw her uncle's vehicle enter the parking lot. She told appellant her ride was there and asked appellant to let her go. Appellant refused to let Stacey Belcher leave the automobile. Appellant's cell phone rang. Stacey Belcher heard a female voice asking who was with appellant. Stacey Belcher stated she was crying at the time. Stacey Belcher managed to open the passenger door and fell out of the car. Appellant grabbed her sweater. Two buttons opened and the sweater came off. Stacey Belcher ran toward the restaurant, screaming for help. The valet returned with Stacey Belcher to the car but appellant was gone.
Stacey Belcher re-entered the Avenue Bar and Grille. Mercy Shipman telephoned Stacey Belcher's father. He arrived shortly before the police did. Stacey Belcher gave the police one of appellant's business cards. She and her father went to the police station where Stacey Belcher gave a statement. While at the station, Stacey Belcher noticed her eye was bruised and marks on her neck. She could pull some of her hair from her head.
Stacey Belcher and her father returned to the Avenue Bar and Grille. Mercy Shipman gave them Stacey Belcher's sweater which she had discovered in the parking lot. The Belchers returned to the police station with the sweater. Stacey Belcher did not seek any medical treatment for her injuries.
Chris Albu, the valet, testified a girl ran toward him, calling for help. She was crying and very upset. Albu observed the girl's hair was out of place. Joseph Russo, a server at the restaurant, testified he observed Stacey Belcher run through the door. Her pigtails had been ripped out. Stacey Belcher was unable to talk and looked as if she were hyperventilating. Russo saw visible marks on Stacey Belcher's neck.
Mercy Shipman testified that Stacey Belcher returned to the table in a frantic state. Her hair was pulled out and she was crying. Stacey Belcher told Shipman what had happened. Shipman contacted Stacey Belcher's father.
Danny Belcher testified he went to the Avenue Bar and Grille after receiving a call from Shipman. His daughter, Stacey, was hysterical. Her hair was half pulled out of her head and she was extremely upset. He verified they returned to the Avenue Bar and Grille to retrieve Stacey Belcher's sweater from Shipman.
Terry Belcher testified he went to the Avenue Bar and Grille to pick up his niece. He drove through the parking lot but did not see Stacey Belcher. Terry Belcher parked his van and entered the restaurant. After waiting for ten to fifteen minutes, he left, drove slowly through the parking lot again but left after he did not see his niece.
Mentor police officer Michael Orf testified he responded to a report of an assault at the Avenue Bar and Grille. Officer Orf observed a female crying hysterically with a bruised eye and red finger marks on her neck. Stacey Belcher told the officer what had happened. Stacey Belcher's version was consistent with her testimony at trial. Officer Orf obtained appellant's name and went to his residence. Appellant was placed under arrest and taken to the police station. Appellant had a strong odor of alcohol about his person. Appellant stated Stacey Belcher tried to buy drugs in his car so he told her to get out of the car. Appellant admitted he may have grabbed Stacey Belcher's neck to push her out of the vehicle.
Phone records entered into evidence showed several phone calls made from appellant's cell phone on November 12, 1998. One call was placed to Stacey Belcher's cousin, other calls were made to Terry Belcher. The records did not reflect that a phone call was attempted to be placed to Danny Belcher.
Michelle White, appellant's fiancee, testified she called appellant on November 12, 1998, at approximately 11:20 p.m. White asked where appellant was and who he was with. White heard a female laughing in the background. Appellant stated the woman was making a phone call. White became angry. As she spoke to appellant, White heard the female mimicking her.
Steve Jaborsky testified he went to the Avenue Bar and Grille with appellant. Jaborsky found a booth in the crowded establishment. A group of people, including Stacey Belcher, asked if they could sit there. Jaborsky agreed. They were joined by appellant fifteen to thirty minutes later. Appellant spoke to Stacey Belcher. Jaborsky heard the word "coke" mentioned. Stacey Belcher and appellant left but Jaborsky did not know where they were going. Appellant returned about fifteen minutes later and asked to borrow twenty dollars ($20) before leaving again.
Appellant testified in his own defense. Appellant admitted to prior convictions for aggravated burglary and domestic violence. He was on parole at the time of the incident. Appellant testified he and Jaborsky arrived at the restaurant at 9:00. p.m. Appellant began talking to Stacey Belcher while sitting at a booth. Appellant remarked that he wished he had some cocaine. Stacey Belcher said she probably could obtain some if she made some phone calls. Appellant and Stacey Belcher went to the bar where they bought some drinks. Stacey Belcher did not want to use the telephones at the bar so appellant offered her the use of his cell phone.
Appellant and Stacey Belcher left the restaurant and entered Jaborsky's unlocked vehicle in the parking lot. Stacey Belcher first called her aunt but the line was busy. She called back again and spoke to her uncle. Stacey Belcher asked her uncle to meet them there. Stacey Belcher said she needed an "eight," meaning three and one-half grams of cocaine. After hanging up, Stacey Belcher told appellant he had to give her two hundred dollars ($200) for the cocaine. Appellant checked his wallet but discovered he did not have enough money. Appellant returned to the restaurant to borrow money from Jaborsky.
When appellant went back to the vehicle, his cell phone was ringing. Appellant spoke to White who demanded to know who was with him. Stacey Belcher was giggling and laughing during the call. She began mimicking White. After appellant hung up, Stacey Belcher told appellant she wanted the money for the cocaine. Appellant refused to do so before he received the cocaine. An argument ensued. Stacey Belcher went to speak to her uncle, who had arrived in the parking lot. Stacey Belcher returned and said she needed the money first. They began to argue again and appellant told Stacey Belcher to get out of the car. She opened the car door, reached back and tried to take appellant's wallet. Appellant grabbed Stacey Belcher's hair to pull her back inside the car. Appellant admitted he pulled off the woman's sweater but denied banging her head against the steering wheel or trying to kiss her. Appellant let Stacey Belcher go when she dropped his wallet. Stacey Belcher ran toward the building, yelling for help. Appellant admitted he violated his parole by drinking alcohol and by attempting to purchase cocaine.
The jury acquitted appellant of the kidnapping charge but found him guilty of abduction. Appellant has filed a timely appeal from his conviction.
Appellant assigns the following errors for review:
 "[1.] The trial court abused its' (sic) discretion when it overruled appellant's counsel (sic) objection to the evidentiary ruling and admitted state's evidence, where the state's evidence failed to show a proper chain of custody.
 "[2.] The trial court erred to the prejudice of appellant when it refused appellant's request for jury instructions.
 "[3.] The trial court violated appellant's constitutional and statutory rights to a speedy trial.
 "[4.] The trial court erred when it overruled appellant's motion for acquittal, pursuant to Crim.R. 29.
 "[5.] The evidence was insufficient as a matter of law to sustain an abduction conviction, or in the alternative, was against the manifest weight of the evidence and should be set aside.
 "[6.] The trial court committed an abuse of discretion when it imposed time restrictions on counsel."
 In his first assignment of error, appellant argues the trial court abused its discretion by admitting Stacey Belcher's sweater into evidence. Appellant maintains the state did not authenticate the evidence or show a proper chain of custody. Appellant contends the prosecution did not demonstrate the sweater was the one worn by Stacey Belcher during the incident. Appellant's stance is that the authenticity of the sweater is suspect because the police did not discover the item during their investigation. Mercy Shipman found the sweater at the site and gave it to Stacey Belcher and her father. They, in turn, took the sweater to the police.
The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Robb (2000), 88 Ohio St.3d 59,68, quoting State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. Absent an abuse of discretion, as well as a showing that the accused has suffered material prejudice, an appellate court will not disturb the ruling of the trial court as to the admissibility of evidence. State v. Martin (1985), 19 Ohio St.3d 122, 129. The term abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. State v. Wolons (1989), 44 Ohio St.3d 64, 68.
Evid.R. 901(A) provides:
 "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."
 Evidence may be authenticated by testimony that a matter is what it is claimed to be. Evid.R. 901(B). "Chain of custody is a part of the authentication and identification mandate set forth in Evid.R. 901 and the state has the burden of establishing the chain of custody of a specific piece of evidence." State v. Brown (1995), 107 Ohio App.3d 194, 200, citing State v. Barzacchini (1994), 96 Ohio App.3d 440, 457-458. The state's burden, however, is not absolute since "the state need only establish that it is reasonably certain that substitution, alteration or tampering did not occur." State v. Blevins (1987), 36 Ohio App.3d 147, 150. A chain of custody may be established by direct testimony or by inference. State v. Conley (1971), 32 Ohio App.2d 54, 60. The proponent of the evidence need not offer conclusive evidence as a foundation but must offer sufficient evidence to allow the question as to authenticity or genuineness to reach the jury. State v. Ewing (Apr. 14, 1999), Lorain App. No. 97CA006944, unreported, 1999 Ohio App. LEXIS 1725. The trier of fact has the task of determining whether a break in the chain of custody exists. Columbus v. Marks (1963), 118 Ohio App. 359. Any breaks in the chain of custody go to the weight of the evidence and not to the admissibility of the evidence. State v. Mays (1995), 108 Ohio App.3d 598.
Stacey Belcher described and identified the sweater at trial. She averred the sweater was in the same or a substantially similar condition as when it was taken to the police station. Danny Belcher, the victim's father, also identified the sweater at trial and stated he took the apparel to the police station that night after Mercy Shipman found it at the Avenue Bar and Grille. Appellant admitted he pulled Stacey Belcher's sweater off that night.
It was for the jury to determine whether a break in the chain of custody occurred because the police did not discover the sweater during their investigation. The victim identified the sweater at trial. Any break in the chain of custody would go to the weight afforded the evidence and not its admissibility. Appellant's first assignment of error lacks merit.
In his second assignment of error, appellant contends the trial court erred by not instructing the jury on assault. Appellant argues the evidence supported such an instruction and the trial court erred by refusing his request that the instruction be given.
R.C. 2945.74 provides that a defendant may be found not guilty of the charged offense but guilty of a lesser included offense. A criminal defendant is entitled to a lesser included offense instruction only where the evidence warrants it. The trial court must determine what constitutes a lesser included offense of the charged crime. The trial court must examine the facts and ascertain whether the jury could reasonably conclude that the evidence supports a conviction for the lesser offense and not the greater. State v. Kidder (1987),32 Ohio St.3d 279.
 "An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." State v. Deem (1988), 40 Ohio St.3d 205, paragraph three of the syllabus.
 The jury convicted appellant of abduction in violation of R.C. 2905.02. That statute provides, in pertinent part:
 "(A) No person, without privilege to do so, shall knowingly do any of the following:
"* * *
 "(2) By force or threat, restrain the liberty of another person, under circumstances which create a risk of physical harm to the victim, or place the other person in fear.
 "(B) Whoever violates this section is guilty of abduction, a felony of the third degree."
 Appellant asserts the trial court should have included a charge of assault. He argues the evidence admitted at trial supported the jury instruction. Assault is defined in R.C. 2903.13 as:
 "(A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn,
 "(B) No person shall recklessly cause serious physical harm to another or to another's unborn.
 "(C) Whoever violates this section is guilty of assault. Except as otherwise provided in division (C)(1), (2), (3), (4), or (5) of this section, assault is a misdemeanor of the first degree."
 The offense of assault carries a lesser penalty than does abduction. Thus, it satisfies the first prong of Deem. The elements of abduction require a person to restrain the liberty of another in circumstances which cause physical harm or fear to another. To commit assault, a person must cause, or attempt to cause, physical harm to another. Abduction may be committed if fear is caused without any physical harm taking place. Therefore, abduction can take place without assault being committed. The second prong of Deem has not been met. Further, abduction requires the restraint of another's liberty. This element is not present in assault. The third prong of Deem also is not satisfied. Therefore, assault is not a lesser included offense of abduction. The trial court did not err by refusing to include a jury instruction on assault. Appellant's second assignment of error is without merit.
Appellant's third assignment of error charges that his right to a speedy trial was violated. Appellant contends two sua sponte continuances by the trial court because of another scheduled trial should not be charged against him to toll the time in which appellant had to be brought to trial.
Under the speedy trial statute, R.C. 2945.71(C)(2), "[a] person against whom a charge of felony is pending * * * shall be brought to trial within two hundred and seventy days after his arrest." The right to a speedy public trial is guaranteed by the Sixth Amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution. The Supreme Court of Ohio has held that "the statutory speedy trial provisions set forth in R.C. 2945.71 [are] coextensive with constitutional speedy trial provisions." State v. King (1994), 70 Ohio St.3d 158, 160. The time requirements set forth in R.C. 2945.71 are subject to the extensions provided in R.C. 2945.72.
The Ohio speedy trial statute is constitutional, mandatory, and must be strictly construed against the state. State v. Singer (1977),50 Ohio St.2d 103, 109. Once the two hundred seventy (270) day statutory limit has expired, the defendant has established a prima facie case for dismissal. State v. Howard (1992), 79 Ohio App.3d 705, 707. At that point, the burden is upon the state to demonstrate any tolling or extension of the time limit. State v. Bowman (1987), 41 Ohio App.3d 318,319. A failure of the state to comply with the mandates of the Ohio speedy trial statute requires discharge of the defendant. State v. Benson
(1985), 29 Ohio App.3d 321, 324. The standard of review of a speedy trial issue is to count the days of delay chargeable to either side and determine whether the case was tried within the time limits set by R.C.2945.71. City of Oregon v. Kohne (1997), 117 Ohio App.3d 179, 180.
Appellant claims the trial court entered two sua sponte continuances. A review of the record reveals only one such continuance entered when the trial court continued the case from the scheduled trial date of July 15, 1999, to September 21, 1999. The trial court did so because another trial was set for the same day.
After carefully considering the record before this court, it is apparent appellant received a timely trial even if the time is not tolled for the sua sponte continuance. Appellant was arrested on November 12, 1999. His attorney filed a motion for continuance which the trial court granted on March 13, 1999. Trial was reset for June 15, 1999. Motions made by the defendant extend the speedy trial time period under R.C.2945.71. State v. Stamps (1998), 127 Ohio App.3d 219. Defense counsel filed a second motion for continuance on June 11, 1999. The trial court rescheduled trial for July 27, 1999, but sua sponte continued the case until September 21, 1999. Appellant's attorney requested a third continuance on September 21, 1999, and trial was set for December 7, 1999.
On November 26, 1999, appellant filed a pro se motion to dismiss. A motion to dismiss tolls the time in which a defendant must be brought to trial from the day it is filed. R.C. 2945.72(E); State v. Ritter (Dec. 17, 1999), Ashtabula App. No. 98-A-0065, unreported, 1999 Ohio App. LEXIS 6100. The trial court denied the motion on January 20, 2000.
On December 27, 1999, appellant filed a motion for insanity. The trial court determined appellant was competent to stand trial on March 23, 2000. The time from the filing of the motion for insanity until the trial court ruled on the motion was tolled. State v. Palmer (1998),84 Ohio St.3d 103.
Defense counsel filed a fourth motion for continuance on March 16, 2000. The trial court granted the motion, and trial was reset for May 2, 2000. This time also was tolled. Trial commenced on May 2, 2000.
As of September 21, 1999, two hundred nine days had passed which were chargeable to the state, including the time for the sua sponte
dismissal. From that date forward until trial began, no time was chargeable to the state due to the various motions filed by appellant. Appellant was brought to trial well within the statutory period of two hundred seventy days. Appellant's third assignment of error is overruled.
Appellant's fourth assignment of error challenges the trial court's denial of his Crim.R. 29(A) motion for acquittal. Appellant asserts the prosecution did not present evidence supporting the charge of abduction. Appellant points out that Stacey Belcher voluntarily walked to the automobile, so there was no showing she was removed from any place by force or threat. Appellant further argues the state did not prove beyond a reasonable doubt that he restrained Stacey Belcher's liberty under circumstances which posed a risk of harm by force or threat of force. Appellant maintains the state provided no corroborating evidence in support of Stacey Belcher's version of events. Also, appellant claims the record lacks any physical evidence to support the victim's account of what occurred on November 12, 1998.
Under Crim.R. 29(A), a court shall not order an entry of judgment of acquittal where the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Bridgeman (1978),55 Ohio St.2d 261, 263. In reviewing the trial court's ruling on this motion, an appellate court must view the evidence in a light most favorable to the state. State v. Wolfe (1988), 51 Ohio App.3d 215. When reviewing the trial court's denial of a motion for acquittal under Crim.R. 29, a reviewing court applies the same test as it would in reviewing a challenge based upon the sufficiency of the evidence to support a conviction. State v. Thompson (1998), 127 Ohio App.3d 511,525. An appellate court only will reverse a trial court's judgment on a Crim.R. 29 motion for acquittal if reasonable minds could only conclude that the evidence failed to prove beyond a reasonable doubt each element of the crime. State v. Miley (1996), 114 Ohio App.3d 738, 742.
The state never argued at trial that appellant removed Stacey Belcher by force or threat of force. The state charged appellant under R.C.2905.02(A)(2). The prosecution contended appellant restrained Stacey Belcher's liberty by force. Appellant's arguments with regard to R.C.2905.02(A)(1) are inapposite.
Appellant asserts the state failed to produce any corroborating evidence supporting Stacey Belcher's testimony. A review of the record shows several witnesses saw Stacey Belcher enter the restaurant in a state of disarray and hysterical. Stacey Belcher's hair was ripped out of her braids. Red marks and scratches were visible on her throat and her eye was bruised. This evidence supports Stacey Belcher's statements that she was physically harmed by appellant. Appellant also argues no one heard Stacey Belcher scream or call for help. Stacey Belcher did not testify she screamed or called for help. Stacey Belcher stated she was crying and asking appellant to release her.
Appellant's argument primarily is that Stacey Belcher's version of events lacked credibility. The jury is given the task of assessing the credibility of witnesses and resolving conflicts in the evidence. Statev. Dehass (1967), 10 Ohio St.2d 230. Appellant's counsel brought out these points at trial. The jury, who observed both Stacey Belcher and appellant testify, chose to believe Stacey Belcher. Her testimony is sufficient to sustain appellant's conviction. Appellant's fourth assignment of error is overruled.
In his fifth assignment of error, appellant submits that his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence. Appellant again contends the state offered no evidence Stacey Belcher was removed by force or threat of force. Appellant further asserts the prosecution did not produce evidence proving beyond a reasonable doubt that Stacey Belcher was restrained of her liberty by force or threat of force.
When reviewing the sufficiency of the evidence to support a criminal conviction, a reviewing court's function is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. After viewing the evidence in a light most favorable to the prosecution, the relevant inquiry is whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
Appellant reiterates essentially the same arguments as raised in the previous assignment of error. It already has been determined that sufficient evidence was admitted at trial which, when viewed in the light most favorable to the prosecution, supports appellant's conviction for abduction.
Appellant also asserts his conviction is against the manifest weight of the evidence. Weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side rather than the other side. When considering whether a conviction is against the manifest weight of the evidence, the appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines if, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. A new trial should be granted only in the exceptional case in which the evidence weighs heavily against the conviction. State v. Thompkins (1997), 78 Ohio St.3d 380.
Stacey Belcher testified appellant prevented her from leaving the automobile. She averred he tried to kiss her, struck her head against the steering wheel, held her by the neck, and severely pulled her hair. Red finger marks were observed on her neck. Several people testified about the disheveled state of Stacey Belcher's hair and that she was hysterical upon her return to the Avenue Bar and Grille. Based upon the evidence admitted at trial, there is no indication the jury lost its way in convicting appellant of abduction. Appellant's fifth assignment of error is overruled.
In his sixth and final assignment of error, appellant contends the trial court abused its discretion by imposing time limits on voir dire,
opening statements, and closing argument. Appellant argues this restriction prevented him from zealously representing his client and impaired his advocacy. Appellant maintains the trial court did not provide a rational explanation as to why the attorneys were so limited.
R.C. 2945.03 provides:
 "The judge of the trial court shall control all proceedings during a criminal trial, and shall limit the introduction of evidence and the argument of counsel to relevant and material matters with a view to expeditious and effective ascertainment of the truth regarding the matters in issue."
 Under R.C. 2945.03, the trial court reserves the right and responsibility to control the proceedings of a criminal trial. State v. Cornwell (1999), 86 Ohio St.3d 560 . Appellant asserts the trial court abused its discretion by limiting his questioning during voir dire. "The scope of voir dire is within the trial court's discretion and varies depending on the circumstances of each case." State v. Bedford
(1988), 39 Ohio St.3d 122, 129. A trial court may not unreasonably or arbitrarily restrict the voir dire
examination but does control the manner in which voir dire is conducted. See State v. Getsy (1998), 84 Ohio St.3d 180.
Appellant has not provided this court with the transcript of the voirdire proceedings below. The appellant bears the responsibility of providing a reviewing court with an adequate record demonstrating the facts, testimony, and evidentiary matters that are necessary to support his or her assignments of error. See Volodkevich v. Volodkevich (1989),48 Ohio App.3d 313, 314. "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." Knapp v. Edwards Laboratories (1980),61 Ohio St.2d 197, 199. Without the record of the proceedings at issue, this court cannot determine if the trial court's limitation concerning the time each attorney was given for questioning during voir dire was unreasonable or arbitrary.
A review of the defense's opening and closing arguments shows that his attorney covered the main points of the case and adequately argued his client's case to the jury. Appellant's counsel objected to the limitation because it would interfere with his "style" in front of the jury. This reason falls short of demonstrating prejudice in the instant case. The facts of the case were not complicated, nor were multiple counts or issues involved. Without a showing of material prejudice, an appellate court will not find a trial court abused its discretion. Appellant's sixth assignment of error is overruled. The judgment of the trial court is affirmed.
JUDGE DIANE V. GRENDELL, O'NEILL, P.J., dissents with Dissenting Opinion, NADER, J., concurs.