DECISION
William S. Gandarilla, defendant-appellant, appeals the judgment of the Franklin County Court of Common Pleas, wherein the court found him guilty of felonious assault, in violation of R.C. 2903.11, a second-degree felony.
Howard R. Hahn, the victim, worked at the Hoover Y Park, in Columbus, Ohio, mowing lawns. On July 18, 2000, after he had finished mowing and put the mower away, he walked past a private residence on the park grounds and suddenly felt pain in his upper right calf, which had a small hole in it and was bleeding. He went to the house, which was about twenty feet away, and talked to appellant, who denied any wrongdoing. Hahn's doctors identified the object that hit his leg as a pellet or BB, and eventually recommended that he leave the pellet in his leg. Detective Zachary Scott interviewed appellant about the incident, and appellant told him it was a joke and he would pay Hahn's medical bills. Detective Scott eventually retrieved the pellet gun from appellant's mother.
Appellant was indicted on November 30, 2000, for felonious assault for knowingly causing serious physical harm to Hahn by means of a deadly weapon or dangerous ordnance, as defined by R.C. 2923.11. The case was heard before a jury on June 26, 2001. There was no issue that appellant fired the pellet gun and a pellet hit Hahn. The issues were whether appellant knowingly caused "serious physical harm" to Hahn and whether the pellet gun was a deadly weapon within the meaning of R.C. 2923.11. Hahn, Detective Scott, and Ronald Dye, a firearms examiner for the Bureau of Criminal Identification and Investigation ("BCI"), testified at the hearing. The jury returned a verdict of guilty. Appellant appeals the judgment entry finding him guilty, asserting the following four assignments of error:
 [I.] The trial court erred by admitting the pellet gun as well as reports and testimony based upon its examination when the prosecution failed to establish a proper chain of custody.
 [II.] The trial court committed plain error by admitting expert testimony that was not based upon scientifically valid, empirically verifiable principles.
 [III.] The judgment of the trial court is not supported by sufficient evidence.
 [IV.] The judgment of the trial court is contrary to the weight of the evidence.
Appellant argues in his first assignment of error the trial court erred by admitting the pellet gun, as well as reports and testimony based upon its examination when the prosecution failed to establish a proper chain of custody. The chain of custody of a piece of evidence is part of the authentication and identification requirement of Evid.R. 901. The state maintains the burden of establishing the chain of custody of a piece of evidence. State v. Brown (1995), 107 Ohio App.3d 194, 200, citing State v. Barzacchini (1994), 96 Ohio App.3d 440, 457-458. However, the prosecution's burden is not absolute, as "[t]he state need only establish that it is reasonably certain that substitution, alteration or tampering did not occur." State v. Blevins (1987), 36 Ohio App.3d 147, 150. A chain of custody may be established by direct testimony or by inference. State v. Conley (1971), 32 Ohio App.2d 54, 60. The proponent of the evidence need not offer conclusive evidence as a foundation, but must offer sufficient evidence to allow the question as to authenticity or genuineness to reach the jury. State v. Ewing (Apr. 14, 1999), Lorain App. No. 97CA006944, unreported. The trier of fact has the task of determining whether a break in the chain of custody exists. Columbus v. Marks (1963), 118 Ohio App. 359. Moreover, even when a break in the chain of custody is uncovered, such goes to the credibility of the evidence and not its admissibility. State v. Burrier (June 16, 2000), Geauga App. No. 98-G-2126, unreported, citing Blevins, supra, at 150; State v. Mays (1996), 108 Ohio App.3d 598; Barzacchini, supra, at 458.
Appellant claims there is nothing to establish that the gun used by him was the same gun obtained from his mother and the same gun tested by the expert. We disagree. Detective Scott testified he received a report of an assault with a pellet gun and Hahn gave him an address where he could find possible suspects. The detective went to the address and spoke to Kevin Harter, who took him to a residence where he could find the pellet gun that was used to shoot Hahn. At the next residence, he spoke to appellant, who admitted he shot Hahn. Appellant told him the pellet gun was not there but directed Detective Scott to his mother's, Bonnie Elkins', place of employment. Detective Scott went to Elkins' job and asked her for the pellet gun. Elkins retrieved the pellet gun from her trunk and gave it to the detective. At trial, Detective Scott identified the pellet gun as the same one he received from Elkins. Appellant did not cross-examine Detective Scott. The state's expert, Ronald Dye, testified that he received the pellet gun he examined from Bob Dunkin, an evidence technician from the Franklin County Sheriff's Office on September 20, 2000. He testified that he spoke to Detective Scott on the phone regarding what tests to run on the gun, and he identified the pellet gun presented at trial as the same one he tested.
We find the state established that it was reasonably certain that the gun used by appellant was the same one obtained from his mother, tested by the expert, and presented at trial. Appellant specifically told Detective Scott where he could find the gun he used to shoot Hahn. When the detective went to that location, appellant's mother readily gave the detective a pellet gun from her trunk. The detective identified the gun at trial as the same one appellant's mother gave to him, and the expert identified it as the same one he tested. The chain of custody was clearly established by direct testimony and by inference. In sum, appellant admitted he shot Hahn with a pellet gun, told the detective where to find the gun he used, and the detective, in fact, found a pellet gun precisely where appellant told him it would be. The jury, as the trier of fact, had the task of determining whether there had been a break in custody, and it apparently found Detective Scott credible and believed the gun presented at trial was the gun used by appellant to commit the crime. We find that any doubt as to the chain of custody was of insufficient weight to overturn appellant's conviction. Appellant's first assignment of error is overruled.
Appellant argues in his second assignment of error that the trial court committed plain error by admitting Dye's expert testimony. Appellant does not challenge Dye's qualification as an expert, but rather, challenges the reliability of the scientific analysis upon which he based his testimony. As an initial matter, we note that "[t]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. The judgment of the trial court will not be reversed on appeal absent an abuse of discretion. Id. An abuse of discretion connotes more than an error of law or judgment and implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
In Ohio, in order for scientific evidence to be admitted, it must be reliable and "must assist the trier of fact in determining a fact issue or understanding the evidence." Miller v. Bike Athletic Co. (1998),80 Ohio St.3d 607, 611. Evid.R. 702(C) provides that if an expert witness is testifying about the results of a test, the testimony is reliable only if: (1) the theory behind the test is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles; (2) the design of the test reliably implements the theory; and (3) the particular test was conducted in a way that will yield an accurate result.
Appellant cites Daubert v. Merrell Dow Pharmaceuticals, Inc. (1993),509 U.S. 579, and complains that no testimony was presented on any of the four reliability factors outlined in that case. The Ohio Supreme Court has adopted the four factors from Daubert to be considered in evaluating the reliability of scientific evidence: (1) whether the theory or technique has been tested; (2) whether it has been subjected to peer review; (3) whether there is a known or potential rate of error; and (4) whether the methodology has gained general acceptance. State v. Nemeth (1998), 82 Ohio St.3d 202, 211, citing Miller, supra, at 611. Both the United States Supreme Court in Daubert and the Ohio Supreme Court in Miller were careful to emphasize that none of these factors is a determinative prerequisite to admissibility. Miller, at 612-613; Daubert, at 593. Thus, as this court has held, "the Daubert case did not create a per se rule of admissibility. The admissibility of evidence remains within the sound discretion of the trial court." State v. Funk (Oct. 25, 2001), Franklin App. No. 00AP-1352, unreported; see, also, State v. Anthony (Oct. 9, 1997), Franklin App. No. 96APA12-1721, unreported.
Appellant contests only the Daubert factors in attacking the reliability of Dye's testimony with respect to his opinion that a projectile with a velocity of over four hundred feet/second is capable of inflicting death. There was no testimony that could have been construed to indicate whether the theory has been subjected to peer review or the known or potential rate of error. However, Dye did testify that, in his capacity as a firearms examiner, he has read about fatal injuries involving BB guns and pellet guns. He also testified that in his profession, there is a standard philosophy that he considers indicative of whether a weapon is capable of killing somebody. Dye stated that at the BCI, they consider anything in excess of four hundred feet/second to be capable of inflicting a fatal injury. He said his and BCI's opinion were based upon actual published data and experimentation showing that it requires a velocity of three hundred sixty-five feet/second in order to penetrate skin and underlying muscle and tissue, and that they rounded up that minimum number to be conservative. This testimony could support that the methodology has been tested and has gained some level of general acceptance. He went on to testify that other conditions would affect whether a projectile at that speed could kill somebody, such as clothing, range, the size of person, and the part of the body that is struck, such as an eye, neck, or temple, which are vulnerable places. Dye testified that based on his testing and expertise, the pellet gun in the present case was clearly capable of inflicting death on a human being.
Because none of these factors is a determinative prerequisite to admissibility, and appellant points us to no Ohio case law that indicates the four factors are either necessary or sufficient for evidence to be admitted, we find that Dye's testimony sufficiently established the reliability of his expert opinion that a projectile travelling at four hundred feet/second was capable of inflicting death. We also note that because the pellet in the present case traveled into Hahn's leg through his skin and muscle and close to his bone, it would be within a layperson's understanding that the same pellet could have easily penetrated an eye or neck, thereby resulting in a fatal injury. Further, although appellant claims that the voir dire examination of Dye was improperly limited in scope because it did not sufficiently examine the Daubert factors, we disagree. Appellant did not object to the voir dire, and any error is waived but for plain error. We find no plain error. The trial court allowed full examination by each counsel and did not limit the voir dire in any way. Therefore, appellant's second assignment of error is overruled.
We will address appellant's third and fourth assignments of error together. Appellant argues in his third assignment of error that his convictions were based upon insufficient evidence. Appellant argues in his fourth assignment of error that the jury's verdict was against the manifest weight of the evidence. In State v. Jenks (1991),61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. Id. at paragraph two of the syllabus. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other. State v. Gray (Mar. 28, 2000), Franklin App. No. 99AP-666, unreported. In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court must unanimously disagree with the factfinder's resolution of the conflicting testimony. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. Whether a criminal conviction is against the manifest weight of the evidence "requires an examination of the entire record and a determination of whether the evidence produced attains the high degree of probative force and certainty required of a criminal conviction." State v. Getsy (1998),84 Ohio St.3d 180, 193.
In a manifest weight of the evidence review, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins, supra. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id. at 387, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. "The weight to be given the evidence and the credibility of the witnesses are primarily issues to be decided by the trier of fact." State v. Burdine-Justice (1998), 125 Ohio App.3d 707, 716. The trier of fact has the benefit of seeing and hearing the witnesses testify and is in the best position to determine the facts of the case. In re Good (1997),118 Ohio App.3d 371, 377.
Appellant was found guilty of felonious assault. R.C. 2903.11, provides:
 (A) No person shall knowingly do either of the following:
* * *
 (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.
Appellant claims the evidence failed to establish that: (1) appellant knowingly caused "serious physical harm" to Hahn; and (2) that the pellet gun was a deadly weapon within the meaning of R.C. 2923.11. With regard to the first argument, R.C. 2901.01(A)(5) defines "serious physical harm" as any of the following:
 (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 (b) Any physical harm that carries a substantial risk of death;
 (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.
Hahn was shot with a pellet gun behind his right knee. He testified that it was bleeding "pretty good." His family doctor made a cut into the opening of the entrance wound and probed the area for over half an hour trying to locate the pellet. However, the pellet was too deep to retrieve. Hahn testified that he then went to a surgeon who eventually determined he could not perform surgery to remove the pellet because there was too much risk involved in damaging the area. The pellet remains in his leg. The injury forced him to use crutches for a week, and he hobbled for two additional weeks. Hahn had to leave his job mowing lawns. He also worked as a sales associate at a sporting goods store, and because his leg hurt and swelled badly for about six to eight weeks, he was forced to sit or lean against something while working. Considering this evidence, at a minimum, we find that Hahn's injuries amounted to physical harm that involved some temporary, substantial incapacity, as defined in R.C. 2901.01(A)(5)(c). Therefore, we find that there was sufficient evidence that Hahn suffered "serious physical injury," and such finding was not against the manifest weight of the evidence.
With regard to appellant's argument that the pellet gun did not constitute a "deadly weapon," we disagree. R.C. 2923.11(A) provides: "`Deadly weapon' means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." As we discussed above, Dye testified that based on his testing and expertise, the pellet gun used in the present case was capable of inflicting death on a human being. He stated that he has read about prior fatal incidents involving pellet guns. He testified that published data considers any projectile that travels over three hundred sixty-five feet/second capable of inflicting death. He stated that during his testing of the gun in question at a two and one-half-foot range, the first shot using the CO2 cartridge already in the gun produced a velocity of four hundred twenty-four feet/second. After shooting the gun four times, the average velocity of the pellets was three hundred sixty-nine feet/second. After conducting tests using a fresh CO2 cartridge at a two and one-half-foot range, the first shot produced a velocity of six hundred three feet/second. After four additional firings, the average velocity using the new cartridge was five hundred eighty-nine feet/second. At a thirty-foot range, using a new cartridge, the pellet gun produced a five-shot average velocity of five hundred thirty-four feet/second. Although Dye admitted that certain conditions such as clothing, body weight, range, and location of impact would affect the capability of such a gun inflicting a fatal injury, that does not change the fact that it was still "capable of inflicting death."
After reviewing the record, weighing the evidence and all reasonable inferences, we find the trial court's decision was not against the manifest weight of the evidence. The jury apparently found Dye credible and chose to believe his testimony. Further, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Therefore, the trial court's decision was not against the manifest weight of the evidence and was supported by sufficient evidence. Appellant's third and fourth assignments of error are overruled.
Accordingly, we overrule appellant's four assignments of error, and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
BRYANT and BOWMAN, JJ., concur.