OPINION
{¶ 1} Defendant-appellant Timothy Franz appeals his conviction in the Mount Vernon Municipal Court for one count of operating a motor vehicle under the influence in violation of R.C. 4511.19 (A)(1) and (A)(6), a misdemeanor of the first degree. The appellee is the State of Ohio.
 {¶ 2} On the evening of August 29, 2003, Trooper David Garber of the Mount Gilead Post of the Ohio State Highway Patrol observed appellant's car cross the centerline of the roadway. Trooper Garber stopped appellant's vehicle and after conversing with appellant, asked him to perform the so-called field sobriety tests. Appellant agreed to submit to the tests. Appellant was subsequently arrested for operating a motor vehicle under the influence. Appellant was transported to the Knox County Sheriff's Department.
 {¶ 3} Prior to submitting to the BAC DataMaster Test, Trooper Garber gave a copy of the BMV Form 2255 to appellant. In the presence of Knox County Deputy Sheriff, Daniel Bobo, Trooper Garber requested appellant submit to the BAC DataMaster Test. Appellant asked if he could speak with an attorney prior to deciding whether to take the test. Trooper Garber responded that appellant could not and appellant thereafter submitted to the test.
 {¶ 4} Appellant was originally charged with one count of operating a motor vehicle under the influence, one count of failure to wear a safety belt, one count of operating a motor vehicle left of center, and one count of possession of an open container.
 {¶ 5} The BAC DataMaster Test result indicated a blood alcohol content of 0.186 grams of alcohol per 210 liters of breath. The appellant's copy of the ticket does not have a time of arrest entered on its face. The court record copy of the ticket indicates a time of arrest of 22:13 hours.
 {¶ 6} On September 29, 2003, appellant filed a motion to suppress and a motion to dismiss in the Mount Vernon Municipal Court. A hearing was held on appellant's motion on November 24, 2003. At that hearing, Trooper Garber testified that the BAC DataMaster Evidence Ticket entered as Defendant's Exhibit C, did not have an observation time entered, while the BAC DataMaster Evidence Ticket marked State's Exhibit 3, did record the observation time. Trooper Garber testified Defendant's Exhibit C was the copy of the ticket he gave to the appellant immediately upon completing the test. Trooper Reggy Streicher testified that a post calibration test of the BAC DataMaster machine was conducted on September 1, 2003. The trooper testified that he failed to record the instrument check result of 0.094 grams per 210 liters of breath on this form. However, Trooper Streicher further testified that he stapled the BAC DataMaster printout which included the instrument check result to the back of the BAC DataMaster Instrument Check Result Form.
 {¶ 7} The Mount Vernon Municipal Court denied appellant's motion to suppress the results of the BAC DataMaster test by journal entry dated January 29, 2004. On April 5, 2004, appellant pled no contest to the OVI charge and the State dismissed the seatbelt, left-of-center and open container violations. The trial court sentenced appellant to 30 days in the Knox County Jail with 3 days to be served in jail and 3 days to be served in a State-approved driver intervention program. The remaining 24 days were suspended pending completion of the 3-day driver intervention program. Appellant was also fined $400 plus court costs and his driver's license was suspended for 180 days retro-active to August 29, 2003. The trial court suspended sentence pending appellant's appeal.
 {¶ 8} Appellant timely filed a notice of appeal and sets forth the following two assignments of error for our consideration.
 {¶ 9} "I. The trial court erred by overrulng the defense motion to suppress the results of a breathalyzer test that was not conducted in compliance with regulations promulgated by the ohio department of health.
"II. The trial court erred by overruling a defense motion to discuss the charges for denial of the right to counsel pursuant to R.C. 2935.20."
 I. {¶ 10} In his first assignment of error, appellant argues that the trial court erred by overruling his motion to suppress. Specifically, appellant argues that the court erred by admitting into evidence the BAC DataMaster Evidence Ticket and the BAC DataMaster Instrument Check Form because a proper chain of custody was not established by the State. We disagree.
 {¶ 11} In most instances, a trial court should have some latitude in ruling on the admissibility of evidence. An appellate court ordinarily must accord deference to a trial court's decision on the admission or exclusion of relevant evidence. State v. Sage (1987), 31 Ohio St. 3d 173,510 N.E. 2d 343. Therefore, we will not disturb a trial court's evidentiary ruling unless we find that the trial court exceeded its discretionary authority in the admission or exclusion of the evidence.State v. Adams (1980), 62 Ohio St. 2d 151, 157, 404 N.E.2d 144.
 {¶ 12} Ohio Adm. Code 3701-53-02 Breath Tests, provides in relevant part "* * * (C) Breath samples of deep lung (alveolar) air shall be analyzed for purposes of determining whether a person has a prohibited breath alcohol concentration with instruments approved under paragraphs (A) and (B) of this rule. Breath samples shall be analyzed according to the operational checklist for the instrument being used and checklist forms recording the results of subject tests shall be retained in accordance with paragraph (A) of rule 3701-53-01 of the Administrative Code. The results shall be recorded on forms prescribed by the director of health."
 {¶ 13} Ohio Adm. Code 3701-53-01 simply requires that the results of the testing be retained for "not less than three years . . ."
 {¶ 14} Ohio Adm. Code 3701-53-04(A) provides:
 {¶ 15} "A senior operator shall perform an instrument check on approved evidential breath testing instruments and a radio frequency interference (RFI) check no less frequently than once every seven days in accordance with the appropriate instrument checklist as set forth in appendices A to D to this rule. The instrument check may be performed anytime up to one hundred and ninety-two hours after the last instrument check."
 {¶ 16} The BAC DataMaster is an "approved evidential breath testing instrument." Ohio Adm. Code 3701-53-02(A).
 {¶ 17} In the case at bar, appellant argues that the discrepancy between his copy of the BAC DataMaster Evidence Ticket and the copy of the ticket entered into evidence by the State at the suppression hearing show a reasonable possibility that the evidence was altered or tampered with so as to preclude substantial compliance with the record keeping requirements of the Ohio Department of Health regulations.
 {¶ 18} "Authentication `is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.' Evid.R. 901(A). The possibility of contamination goes to the weight of the evidence, not its admissibility. `A strict chain of custody is not always required in order for physical evidence to be admissible.' Statev. Wilkins (1980), 64 Ohio St.2d 382, 389, 18 O.O.3d 528, 532,415 N.E.2d 303, 308; see State v. Downs (1977), 51 Ohio St.2d 47, 63, 5 O.O.3d 30, 38, 364 N.E.2d 1140, 1150." State v. Ritchey (1992),64 Ohio St.3d 353, 360, 595 N.E.2d 915, 923 overruled on other grounds,State v. McGuire (1997), 80 Ohio St.3d 390, 402-404, 686 N.E.2d 1112. Moreover, a chain of custody can be established by direct testimony or by inference. State v. Conley (1971), 32 Ohio App.2d 54, 60,288 N.E.2d 296, 300. The issue of whether there exists a break in the chain of custody is a determination left up to the trier of fact.Columbus v. Marks (1963), 118 Ohio App. 359, 194 N.E.2d 791. Any breaks in the chain of custody go to the weight afforded to the evidence, not to its admissibility. Id.
 {¶ 19} Here, the records offered at the suppression hearing, and about which testimony was offered, were sufficiently identified.
 {¶ 20} At the hearing in the case at bar, the Trooper testified that he failed to write the 20-minute observation time on the appellant's copy of the BAC DataMaster Evidence Ticket. However, the Trooper did record that time period on the original copy of the BAC DataMaster Evidence Ticket that the State submitted into evidence. The Trooper testified that he followed the proper procedure in appellant's case for performing the BAC test. Appellant does not allege that the Trooper failed to observe him for the requisite time period prior to the admission of the BAC test.
 {¶ 21} Accordingly, the trial court correctly ruled that the State had met its burden of showing substantial compliance with the Department of Health regulations and the appellant failed to demonstrate how his case was prejudiced by the clerical error. See, State v. Willis (1999),131 Ohio App.3d 646, 723 N.E.2d 198.
 {¶ 22} Appellant's second argument does not implicate the test performed upon him; rather appellant alleges that the subsequent calibration of the BAC DataMaster machine on September 1, 2003, was not conducted in accordance with the Ohio Department of Health regulations. Specifically, appellant argues that the calibrating officer failed to record the instrument check result on the pre-printed form. The testimony at the hearing on appellant's motion to suppress further revealed that the figure was added to that form at a later date.
 {¶ 23} Trooper Steicher admitted that on September 1, 2003 he had failed to write the instrument check result on the BAC DataMaster Instrument Check Form; however the Trooper did staple the actual printout from the BAC DataMaster which included the instrument check result to the back of the BAC DataMaster Instrument Check Form. The Trooper further testified that he correctly performed all of the required tests to properly calibrate the machine according to the Ohio Department of Health regulations.
 {¶ 24} The trial court correctly based its discretion to admit the BAC DataMaster Instrument Check Form on the State's establishing substantial compliance with the Ohio Department of Health regulations and the appellant's lack of prejudice. "In the instant case, nearly all of the information required on the BAC DataMaster calibration checklist was completed, including checkmarks in all of the boxes indicating the steps taken to calibrate the testing instrument. The target value was also listed on the form. The only omission on the form was a handwritten indication of the test result. The operator attached a copy of the BAC DataMaster evidence ticket on the backside of the form. Thus, we find that substantial compliance was demonstrated." State v. Willis, supra, at 653, 723 N.E.2d at 202-203.
 {¶ 25} In addition this court has previously held that proper calibration of the breath testing machine within seven days of a particular test is sufficient and renders that test in compliance with rules and regulations of Department of Health. State v. Parker (May 9, 1995), 5th Dist. No. 94-CA-483. As long as the proper pre-test calibration of the breath testing machine occurs, the test result is admissible as evidence. Id.; State v. Stecion, 9th Dist. No. 20626, 2002-Ohio-318. Thus, the question regarding a subsequent calibration is not an issue. Id.
 {¶ 26} Appellant presented the trial court with no evidence of any malfunctions of the BAC DataMaster either at the time his test was given or when the machine was calibrated seven days earlier. Accordingly, the clerical error on the required calibration which occurred after appellant's test is not relevant evidence.
 {¶ 27} Accordingly, appellant's First Assignment of Error is overruled.
 II. {¶ 28} In his Second Assignment of Error appellant maintains that the trial court erred in overruling his motion to dismiss the charges. Specifically, appellant argues that he was continually denied his right to counsel subsequent to his arrest for OVI. We disagree.
 {¶ 29} R.C. 2935.20 states:
 {¶ 30} "After the arrest, detention, or any other taking into custody of a person, with or without a warrant, such person shall be permitted forthwith facilities to communicate with an attorney at law of his choice who is entitled to practice in the courts of this state, or to communicate with any other person of his choice for the purpose of obtaining counsel. Such communication may be made by a reasonable number of telephone calls or in any other reasonable manner. Such person shall have a right to be visited immediately by any attorney at law so obtained who is entitled to practice in the courts of this state, and to consult with him privately. No officer or any other agent of this state shall prevent, attempt to prevent, or advise such person against the communication, visit, or consultation provided for by this section.
 {¶ 31} "Whoever violates this section shall be fined not less than twenty-five or more than one hundred dollars or imprisoned not more than thirty days, or both."
 {¶ 32} The Sixth Amendment, as applied to the states through theFourteenth Amendment, guarantees that, in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his defense. McNeil v. Wisconsin (1991), 501 U.S. 171, 175, 111 S.Ct. 2204,115 L.Ed.2d 158. The Sixth Amendment right to counsel does not attach until a prosecution is commenced, that is, after the initiation of adversary criminal proceedings by a formal charge, a preliminary hearing, an indictment, information or an arraignment. Kirby v. Illinois
(1972), 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411. Once the right has attached and has been asserted by the accused, the Sixth Amendment provides a right to counsel at all critical stages of the proceedings.Spano v. People of the State of New York (1959), 360 U.S. 315, 327,79 S.Ct. 1202, 3 L.Ed.2d 1265 (concurring opinion by Justice Stewart).
 {¶ 33} A critical stage of the proceedings includes, after indictment, any attempt by the government to elicit information from the accused concerning the charged crime. Michigan v. Jackson (1986),475 U.S. 625, 630, 106 S.Ct. 1404, 89 L.Ed.2d 631; and Massiah v.United States (1964), 377 U.S. 201, 206, 84 S.Ct. 1199, 12 L.Ed.2d 246. Incriminating statements concerning pending charges are inadmissible at trial if the state, in obtaining the evidence, knowingly circumvents the right of an accused to have counsel present in a confrontation between the accused and a state agent. Maine v. Moulton (1985), 474 U.S. 159, 171,106 S.Ct. 477, 88 L.Ed.2d 481.
 {¶ 34} In Dobbins v. Ohio Bur. Motor Vehicles (1996), 75 Ohio St.3d 533,1996-Ohio-454, 664 N.E.2d 908, the Ohio Supreme Court observed "[i]nitially, we note that the right to counsel associated with the protection against self-incrimination contained in the Fifth Amendment to the United States Constitution, or as guaranteed by the Sixth Amendment, does not apply to the stage at which the officer requested the chemical test for alcohol content". Id. at 537, 664 N.E.2d at 911. Further the court stated: "[w]e realize that the decision of whether or not to submit to a blood-alcohol content test is a difficult one to make and one that most people would prefer to make on the advice of an attorney. However, the consent mandated when a person chooses to drive on Ohio roadways is an entirely civil requirement and the criminal protections for individuals that the General Assembly created do not apply". Id. at 539,664 N.E.2d at 539.
 {¶ 35} Appellant's reliance upon our decision in Village of Lexingtonv. Reddington (1993), 86 Ohio App.3d 643, 621 N.E.2d 758 is misplaced. We relied upon that decision in State v. Griffith (Dec. 27, 1994), 5th Dist. No. 94 CA02003. The decision in Griffith was subsequently overruled by the Ohio Supreme Court in State v. Griffith (1996), 74 Ohio St.3d 554,660 N.E.2d 710, wherein the court held imposition of the exclusionary rule does not lie as remedy for police violation of an accused's statutory right to counsel in OVI cases. In other words, the prosecution can present evidence of the result of an otherwise admissible breath alcohol content analysis of accused; the evidence is not deemed inadmissible solely because the police failed to comply with the statutory right to counsel. The court in Dobbins, supra, noted that "[t]he General Assembly provided a specific statutory punishment for violations of R.C. 2935.20. If the General Assembly intended the result sought by appellant it would have so provided." 75 Ohio St.3d at 539,664 N.E.2d at 912.
 {¶ 36} The Court in Dobbins, supra, specifically rejected appellant'sSixth Amendment challenge: "`Petitioner's argument that theSixth Amendment right to counsel attaches prior to taking an alcohol breath test was rejected by the Supreme Court on appeal in Nyflot. See Nyflot,474 U.S. at 1029, 106 S.Ct. at 587 [88 L.Ed.2d at 569]. Nyflot therefore controls our holding that petitioner was not denied her Sixth Amendment right to counsel in the instant case.' McVeigh v. Smith (C.A.6, 1989),872 F.2d 725, 727-728. See, also, Roberts v. Maine (C.A.1, 1995),48 F.3d 1287, 1290-1291". 75 Ohio St.3d at 538, 664 N.E.2d at 912. The court in Dobbins noted that the police had violated R.C. 2935.20 in that case, but refused to exclude as evidence that the appellant "refused" to take the chemical test.
 {¶ 37} The trial court correctly noted that appellant did not make any incriminating statements at any point subsequent to his arrest. As theFifth and Sixth Amendment right to counsel were neither implicated nor violated, the trial court correctly overruled appellant's motion to dismiss.
 {¶ 38} Appellant's Second Assignment of Error is overruled.
 {¶ 39} For the foregoing reasons, the judgment of the Mount Vernon Municipal Court, Knox County, Ohio, is affirmed.
Gwin, J., Boggin, P.J., and Edwards, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Mount Vernon Municipal Court, Knox County, Ohio, is affirmed. Costs to appellant.